UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA ADVOCATES FOR NURSING HOME REFORM,<br><br>Plaintiff,<br><br>v.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Defendants. | Case No. 24-cv-01119-AMO<br><br>**ORDER RE MOTION TO REMAND**<br><br>Re: Dkt. No. 18 |

Before the Court is Plaintiff California Advocates for Nursing Home Reform's ("CANHR") motion to remand. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for July 19, 2024, was **VACATED**. *See* Civ. L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** CANHR's motion, for the following reasons.

I.  **BACKGROUND**

   A.  **Factual Background**

CANHR helped draft and enact California Insurance Code sections 10113.71 and 10113.72 (the "Statutes"), which became effective January 1, 2013. Compl. (ECF 1-1) ¶¶ 23-24. CANHR then spent and devoted significant staff time and other resources to making sure insurance companies like Prudential knew about and fully complied with these Statutes – time that was taken away from other efforts relevant to CANHR's elderly constituents and its core mission. Compl. ¶ 24. The Statutes generally require that life insurers provide: (1) a 60-day grace period in the policy contract and in practice (10113.71(a)); (2) sufficient notice of missed premium and "of

pending lapse and termination" prior to the effective termination date (10113.71(b)); and (3) an annual opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium (10113.72). *See McHugh v. Protective Life Insurance Co.*, 12 Cal. 5th 213, 240 (2021). These Statutes

> provide[] consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would benefit. Under existing law, individuals can easily lose the critical protection of life insurance if a single premium is accidentally missed (even if they have been paying premiums on time for many years) . . . Therefore, the protections provided by [the Statutes] are intended to make sure policyholders have sufficient warning that their premium may lapse due to nonpayment.

*McHugh*, 12 Cal. 5th at 241.

Noncompliance with the Statutes renders any attempted lapse or termination for nonpayment of premium null and void. *Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 WL 4596286, at *1 (9th Cir. Oct. 6, 2021) (citing *McHugh* and affirming the Southern District's grant of summary judgment in a related Statutes case and confirming that "[a]n insurer's failure to comply with these statutory requirements means that the policy cannot lapse."). Indeed, that policies cannot terminate absent compliance with procedural and statutory notice requirements has been a feature of California insurance law for decades. *See, e.g.*, *Kotlar v. Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1121 (2000) ("If cancellation is defective, the policy remains in effect even if the premiums are not paid.")

Prudential originally refused to apply the Statutes to any pre-2013 policies. Compl. ¶¶ 7-9, 30-41. Prudential read the Statutes as not applying to any policies written or sold before the Statutes' 2013 effective date, even if the lapses occurred in or after 2013. Compl. ¶¶ 7-9. Prudential thus failed to provide the Statutes' mandatory protections to thousands of pre-2013 policies before lapsing them for nonpayment of premium. Compl. ¶¶ 30-41. CANHR contends that by plain operation of the Statutes, and other principles, those policies were not properly terminated.

In August 2021, the California Supreme Court confirmed that the Statutes apply to pre-2013 policies. *McHugh*, 12 Cal. 5th at 220 ("We conclude that sections 10113.71 and 10113.72

1  apply to all life insurance policies in force when these two sections went into effect, regardless of
2  when the policies were originally issued."). Despite that outcome, Prudential still does not fully
3  comply with and apply the Statutes and their related Insurance Code counterparts to all pre-2013
4  policies. Compl. ¶¶ 7-9, 30-41. For example, Prudential did not amend all its pre-2013 policies to
5  include the now mandatory written grace period of 60 or more days. Compl. ¶ 34. Prudential also
6  refused to put the improperly lapsed policies back in force or to inform its California customers,
7  whose policies it wrongfully lapsed, that their policies are in-force due to Prudential's errors.
8  Compl. ¶ 8. Prudential also did not pay, or even acknowledge its obligation to pay, thousands of
9  California beneficiaries whose policies it improperly terminated and are now entitled to death
10 benefits (e.g. because the named insured died while the policies should have been deemed in force
11 as a matter of law, such as where the insured died before Prudential cured its errors). Compl. ¶ 8;
12 *see also id.* ¶¶ 34-38 (cataloging additional violations).

### B. Procedural History

CANHR filed its original complaint in Alameda Superior Court in January of 2024. Compl. (ECF 1-1). Defendant Prudential removed the case to this Court on February 23, 2024, citing Title 28 USC §§ 1332, 1441, and 1446. ECF 1.

CANHR alleges two causes of action, both of which seek only equitable relief: (1) for declaratory relief under California's Declaratory Judgment statutes (Cal. Civ. Code, §§ 1060, et seq.); and (2) for violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code, §§ 17200, et seq.). *See* Compl. In the first cause of action, CANHR seeks declarations from the Court including that the Statutes applied to all of Prudential's policies at all relevant times, that Prudential violated those Statutes and that, as a result, Prudential's lapse and termination of those policies was null and void. Compl. ¶ 65. Under the second cause of action, CANHR seeks injunctive relief like the restoration of insurance policies back to active status, along with restitution of withheld policy benefits back to policy owners or their beneficiaries. Compl. ¶ 76.

//
//

## II. DISCUSSION

CANHR moves to remand the case to state court on two bases: (1) that it lacks standing under Article III because the injuries it suffered in expending its organizational resources are not redressable by the declaratory relief and UCL claims it brought in its state court complaint, and (2) the Court lacks equitable jurisdiction because federal courts do not have jurisdiction to hear equitable claims unless the plaintiff has no adequate remedy at law – CANHR specifically pleads that it seeks equitable relief in lieu of any potential legal claims or remedies.[1] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "As a general rule, if the district court is confronted with an Article III standing problem in a removed case – whether the claims at issue are state or federal – the proper course is to remand for adjudication in state court." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018). "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III*." Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

Before allowing this removed case to proceed in federal court, the Court must ensure that CANHR has Article III standing. *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 673-74 (9th Cir. 2021). As stated in *Magadia*, to meet the "irreducible constitutional minimum" of standing, a plaintiff must have (1) suffered an "injury in fact," (2) that is "fairly traceable" to the challenged conduct, and (3) will be redressed by a favorable decision. *Id.* at 673-74 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). These three elements are referred to as, respectively, (1) injury in fact, (2) causation, and (3) redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).

The parties do not dispute CANHR's satisfaction of the first element – injury in fact arising out of CANHR's money and time spent promoting the Statutes. Opp. (ECF 22) at 4-5.

---

[1] Because it finds that CANHR lacks Article III standing for the reasons stated below, the Court does not reach CANHR's second argument in favor of remand.

1  But Defendants specifically contest the second standing element, traceability. *Id.* at 5, n.3
2  ("Prudential disputes any connection between CANHR's alleged injury and any conduct by
3  Prudential"). This alone supports remand. *See Lujan*, 504 U.S. at 560-61 (holding that the party
4  seeking federal jurisdiction bears the burden of establishing traceability, i.e., "a causal connection
5  between the injury and the conduct complained of").

The parties argue most pointedly, however, regarding the third standing element, redressability. "Redressability" requires that the relief sought in the lawsuit be able to compensate, or redress, the "injury in fact." *Steel Co. v. Citizens for a Better Environment*, 523 US 83, 107 (1998). Because "no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury," *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021), the party invoking federal jurisdiction must show that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision,'" *Lujan*, 504 U.S. at 561.

Here, the injury in fact (i.e., the money and resources CANHR spent promoting the Statutes) is not redressable by either of CANHR's two causes of action because none of those causes of action seek return of that same money or resources.[2] This is fatal to Defendants' argument that CANHR has standing to proceed in this Court. *See Steel Co.*, 523 U.S. at 109-110 ("Having found that none of the relief sought by respondent would likely remedy its alleged injury in fact, we must conclude that respondent lacks standing to maintain this suit, and that we and the lower courts lack jurisdiction to entertain it."). CANHR's complaint confirms the lack of redressability. *See* Compl. ¶ 68 (stating that CANHR "does not and could not" seek to redress its organizational losses through these claims). Indeed, Defendants admit that CANHR's injury in fact cannot be redressed by the claims it advances in this case. Opp. at 5 (acknowledging that CANHR's injury in fact "is simply not redressed via the cause of action in its complaint"). Defendants thus fail to establish that CANHR's injury in fact is likely to be redressed by a favorable decision in this lawsuit. This also independently requires remand.

---

[2] California's UCL "limits the remedies available for UCL violations to restitution and injunctive relief." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005).

Defendants present a further argument – that simply because CANHR filed a lawsuit, presumably believing it would get something out of it, then this alone proves "redressability." Opp. at 5. Defendants provide no legal authority in support of this premise. But more importantly, the Constitution demands more than the mere filing of a lawsuit to establish redressability. Therefore, remand is required for want of federal subject matter jurisdiction.

### III. CONCLUSION

The Court hereby **GRANTS** CANHR's motion to remand due the lack of Article III standing. The Court **TERMINATES** as moot Defendants' motion to stay the case – the Court cannot grant a stay in a case over which it lacks subject matter jurisdiction.

The Clerk **SHALL** transmit the file to the Superior Court of the State of California, County of Alameda, and close the case.

**IT IS SO ORDERED.**

Dated: December 12, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**